UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

**CIVIL ACTION NO.: 4:06CV-144-M**

**ROBERT EARL SHOUSE, et al.**                                                                                    **PLAINTIFFS**

**v.**

**DAVIESS COUNTY, KENTUCKY, et al.**                                                                    **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER

This matter is before the Court upon a renewed motion by the defendants, David Osborne, Victor Stephens, and James Wyatt in their official and individual capacities, and Daviess County, Kentucky (collectively, the "Jail Defendants"), for summary judgment [DN 80]. Fully briefed, this matter is ripe for decision.[1]

### I. DISCUSSION

David Osborne and James Wyatt argue that they are entitled of official immunity under Kentucky law for the state law negligence claims asserted against them.[2] Under Kentucky law, county jailers and deputy jailers are cloaked with official immunity for their discretionary acts or functions made in good faith and within the scope of their authority. Yanero v. Davis, 65 S.W.3d

---

[1] The facts of this case and the applicable standard of review were set forth in the Court's Memorandum Opinion [DN 79] granting in part and denying in part the Jail Defendants' prior motion for summary judgment. The plaintiffs concede that the state law claims against Daviess County and the other Jail Defendants in their official capacities should be dismissed. The plaintiffs also concede that the state law claims asserted against Victor Stephens in his individual capacity and the plaintiffs claim for false imprisonment should be dismissed.

[2] The doctrine of official immunity is a common-law doctrine that provides immunity to state law tort claims for public officials exercising discretionary functions. Yanero v. Davis, 65 S.W.3d 510, 523-24 (Ky. 2001). It is a separate and distinct concept from qualified immunity available under § 1983. Owen v. City of Independence, Mo., 445 U.S. 622, 647-48 n.30 (1980). Since the only matters that remain to be decided implicate Kentucky tort law, this discussion of immunity is only relevant to those claims.

510, 522 (Ky. 2001); see also Rowan County v. Sloas, 201 S.W.3d 469, 475 (Ky. 2006). Discretionary acts or functions are "those involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment[,]" id., whereas a ministerial act is "one that requires only obedience to the orders of others, or when the officer's duty is absolute, certain, and imperative, involving merely execution of a specific act arising from fixed and designated facts[,]" id. If all material facts have been resolved, then "whether a particular defendant is protected by official immunity is a question of law . . . ." Sloas, 201 S.W.3d at 475 (citation omitted). Here, Osborne and Wyatt argue that they are entitled to official immunity because their acts were discretionary in nature.

### A. Jailer Osborne

Under Kentucky law, a jailer has a duty "'to exercise reasonable and ordinary care and diligence to prevent unlawful injury to a prisoner placed in his custody . . . .'" Id. at 479 (quoting Lamb v. Clark, 282 Ky. 167, 138 S.W.2d 350, 352 (1940)). However, this duty to prevent unlawful injury "'arises only upon the discovery of some fact which would lead a reasonable person to believe there is some likelihood of . . . injury.'" Id. (quoting Franklin County, Ky. v. Malone, 957 S.W.2d 195, 200 (Ky. 1998)). Therefore, "[j]ailers and deputy jailers can be sued for their tortious acts or omissions occurring within the scope of their employment" as suggested by the plaintiffs, but only "[i]f those acts or omissions occur during the performance of ministerial functions[.]" Commonwealth v. Harris, 59 S.W.3d 896, 899 (Ky. 2001).

The plaintiffs argue that Osborne breached this duty by failing to install suicide-proof vents in isolation cells. They contend that Osborne should have been aware that the isolation cells were a suicide risk based on a single prior suicide attempt in a similar jail cell. The Court disagrees. First, there is no evidence in the record to suggest that Osborne was aware of the suicide risk posed by

2

Shouse. See, e.g., Malone, 957 S.W.2d at 199-200 (finding that a jailer that had no personal involvement with an inmate that committed suicide cannot be liable for the inmate's death), overruled on other grounds by Yanero, 65 S.W.3d at 523. Furthermore, the manner in which Osborne implemented safety protocols at the Daviess County Detention Center is an inherently discretionary function. See, e.g., Minger v. Green, 239 F.3d 793, 802 (6th Cir. 2001) (finding that "[t]he implementation of a security system is a discretionary function" for purposes of Kentucky official immunity); Sloas, 201 S.W.3d at 481 (implementation of safety procedures by a jailer in a jail work program is a discretionary function); Malone, 957 S.W.2d at 201 ("The enactment of rules prescribing proper treatment of prisoners necessarily involves discretionary policy determinations and consequently such an act is clearly a discretionary function . . . ."); James v. Wilson, 95 S.W.3d 875, 906 (Ky. Ct. App. 2002) ("the enactment of safety rules is a discretionary function"). There is no statute or policy identified by the plaintiffs to suggest that Osborne was under a ministerial duty to install vents that would make it impossible for inmates to commit suicide. Instead, the safety protocols at the jail may be implemented "in one or two or more ways, either of which would be lawful," and because the decision as how to implement the safety protocols "is left to the will or judgment of" Osborne, his actions are necessarily discretionary. Upchurch v. Clinton County, 330 S.W.2d 428, 430 (Ky. 1959) ("Discretionary . . . duties are such as necessarily require the exercise of reason in the adaptation of means to an end, and discretion in determining how or whether the act shall be done or the course pursued.") (quotation omitted).

The plaintiffs suggest that Osborne poorly implemented a suicide prevention policy. But along with the power to make discretionary decisions, comes the "'power to make an honest mistake of judgment.'" Sloas, 201 S.W.3d at 484 (quoting Yanero, 65 S.W.3d at 510). The plaintiffs also

3

suggest that Osborne "cannot show that [he] acted in a good faith belief that [his] conduct was legally permissible." (Pls.' Br. at 4.) However, once Osborne establishes that he was performing a discretionary act or function, which he has, "the burden shifts to the plaintiff to establish by direct or circumstantial evidence that the discretionary act [was in bad faith]." Id. at 476. In other words, it is not for Osborne to establish that he was acting in good faith as suggested by the plaintiffs, but for the plaintiffs to establish that Osborne was acting in bad faith. There is simply no evidence in the record, circumstantial or otherwise, to suggest that Osborne was acting in bad faith. For these reasons, summary judgment in favor of Osborne in his individual capacity is appropriate.

### B. Corporal Wyatt

Wyatt argues that the state negligence claim asserted against him should be dismissed for two reasons. First, Wyatt contends that he is entitled to official immunity because his acts were discretionary. The Court disagrees. Although the promulgation of safety rules is a discretionary function, their enforcement is a ministerial function. James, 95 S.W.3d at 906. Here, Osborne implemented various safety protocols for the Daviess County Detention Center. For example, Osborne testified that when an inmate's risk assessment protocol level is changed by a mental health professional, the jail's policy is for the guard to "[f]ollow the medical health professional's instructions." (Osborne Dep. 28:3-13, Sept. 20, 2007.) Yet there is evidence in the record to suggest that Wyatt did not follow the medical health professional's instructions in accordance with jail policy. Furthermore, it was the policy of the jail to monitor inmates in isolation every 60 minutes. (Wyatt Dep. 16:18-21, Sept. 19, 2007.) It is undisputed that Wyatt, who was assigned the duty to monitor Shouse while in isolation, was aware of this policy, yet failed to monitor him in accordance with the policy. (Id. 101:4-14, 102:16-25.) Wyatt's actions were ministerial in nature in that they

4

required "only obedience to the orders of others" and involved the mere "execution of a specific act arising from fixed and designated facts." Yanero, 65 S.W.3d at 522 (citations omitted). Because Wyatt's alleged actions were ministerial in nature, Wyatt is not entitled to official immunity. Wyatt also argues that the negligence claim asserted against him is merely duplicative of the plaintiffs' § 1983 claim. To be sure, the plaintiffs are not entitled to a double recovery. Black v. Ryder/P.E.I. Nationwide, Inc., 15 F.3d 573, 580-81 (6th Cir. 1994). However, the plaintiffs are still "'entitled to proceed on various theories of recovery . . . .'" Id. (quoting U.S. Indus., Inc. v. Touche Ross & Co., 854 F.2d 1223, 1259-60 (10th Cir. 1988)).[3] For these reasons, Wyatt's motion for summary judgment as to the plaintiffs' state law negligence claim will be denied.

## II. CONCLUSION

Based on the foregoing and the Court's prior Memorandum Opinion, it appears that the only triable issues that remain are whether Wyatt was deliberately indifferent to Shouse's serious medical needs and whether Wyatt negligently caused Shouse's death. Therefore, **IT IS HEREBY ORDERED** that the defendants' motion for summary judgment [DN 80] is **GRANTED** in part and **DENIED** in part. It is denied as to the negligence claim asserted against James Wyatt in his individual capacity. It is granted in all other respects.

cc: Counsel of Record

---

[3] The Court also notes that the required state of mind to be liable for negligence is different than the deliberate indifference state of mind that is required for liability under § 1983. Therefore it is possible that a jury could find that Wyatt negligently caused Shouse's death, without finding that he was deliberately indifferent to Shouse's serious medical needs.

5