UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

**CIVIL ACTION NO.: 4:06CV-144-M**

**ROBERT EARL SHOUSE, et al.**                                                      **PLAINTIFFS**

**v.**

**DAVIESS COUNTY, KENTUCKY, et al.**                                          **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER

This matter is before the Court upon various pretrial motions [DN 89 and 91] and an exhibit list objection [DN 90] filed by the defendants, James Wyatt ("Wyatt"), James Mingo ("Mingo"), and the Green River Regional Mental Health-Mental Retardation Board, Inc. ("River Valley"). Fully briefed, these motions are ripe for decision.

### A. EXHIBIT LIST OBJECTION [DN 90]

Wyatt objects to several exhibits identified by the plaintiffs in their exhibit list. Each of the objections will be addressed in turn.

Department of Justice Report (**Dated Exhibit 1**)

The plaintiffs list an April 10, 1998, Department of Justice report as an exhibit they plan to introduce at trial. In the report, the DOJ identified several constitutional deficiencies it found at the Daviess County Detention Center ("DCDC") including deficiencies related to suicide prevention. Wyatt argues that this evidence is irrelevant and prejudicial whereas the plaintiffs argue that the defendants' knowledge of the report and its warnings "bears on their culpability for [Shouse's] death in this case." The Court finds that this report is irrelevant. First, the report was issued by the DOJ in 1998, approximately eight years before Wyatt even began working at the jail. Furthermore, the DOJ issued a subsequent report in 2004, again before Wyatt was even employed by DCDC, which

found that DCDC had adequately addressed the deficiencies it identified in its initial report. Without any evidence linking the report to Wyatt or the other defendants, the report is simply irrelevant to the matters that will be tried in this case. That is, this report does not make it more probable or less probable that Wyatt or the other defendants were deliberately indifferent to Shouse's serious medical needs. Therefore, Wyatt's objection to the April 10, 1998 Department of Justice report is **SUSTAINED**.

<u>Psychiatric Evaluation (**Dated Exhibit 10**) and Psychiatric Evaluation (**Dated Exhibit 17**)</u>

Wyatt argues that these two psychiatric evaluations prepared by Dr. Chapman, DCDC's psychologist, are inadmissible because they are irrelevant and unauthenticated. Because Wyatt is not a medical professional, he contends that he had no duty to review these documents, and the documents should therefore be inadmissible. The plaintiffs generally argue that Wyatt's knowledge of Shouse's suicidal tendencies is relevant to this matter. They also argue that the evaluations are certainly relevant as to their claim against Mingo and River Valley who they contend were under a duty to review these evaluations, but failed to do so.

These evaluations are relevant as to the plaintiffs' claim. The documents bear on the issue of what Mingo knew or should have known from a review of the documents. Furthermore, these evaluations are relevant as to the plaintiffs' claim against Wyatt. Although the plaintiffs do not contend that Wyatt was under a duty to review these evaluations, Chapman's psychological assessment may go to show whether Shouse was outwardly manifesting any suicidal tendencies that Wyatt may have observed. Therefore, Wyatt's relevancy objection is **OVERRULED**. Wyatt's objection is otherwise **RESERVED** pending appropriate authentication of the evaluations at trial.

> Medical Request (**Dated Exhibit 7**), Medical Request (**Dated Exhibit 8**), Grievance (**Dated Exhibit 9**), Prescription Order (**Dated Exhibit 11**), Grievance (**Dated Exhibit 12**), Prescription Order (**Dated Exhibit 18**), Tased Report (**Dated Exhibit 28**), Shouse Incident History (**Undated Exhibit 4**), Shouse Cell Movement History (**Undated Exhibit 5**), Shouse Prescription History (**Undated Exhibit 14**)

These exhibits contain, in part, an incident history between Shouse and the guards at DCDC. Some of these incidents include Shouse hitting his head on a cell door, Shouse reporting demons in his mat, among others. Wyatt has indicated that he may have been aware of these prior incidents. Because knowledge of these prior incidents would be relevant as to whether Wyatt was aware of Shouse's suicidal tendencies, they are admissible. Other exhibits contain medical request forms, grievance forms, prescription order forms, and prescription histories. Like Chapman's psychiatric evaluations, these exhibits are clearly relevant as to the plaintiffs' claim against Mingo and River Valley. The plaintiffs argue that Mingo should have reviewed these documents, but failed to do so. These documents, although arguably less relevant as to Wyatt, may again show whether Shouse was outwardly manifesting any suicidal tendencies. Also, if Wyatt was aware of the multiple requests that Shouse had made to see DCDC's medical staff and requests for medication, he may have known, or should have known, that Shouse was experiencing certain mental issues. Therefore, Wyatt's objection to these exhibits is **OVERRULED**.

> Miscellaneous Request Form (**Dated Exhibit 24**)

In this form, Shouse requested that some of his lost clothing be replaced. Wyatt contends that this exhibit is irrelevant. Because the plaintiffs do not identify its relevancy, Wyatt's objection to this exhibit is **SUSTAINED**.

Shouse Letter to Children (**Dated Exhibit 25**)

The plaintiffs identify a December 19, 2005 letter Shouse wrote to his children while incarcerated at DCDC. In the letter, Shouse explained that he would not be spending Christmas with his children, but that once he was released from DCDC, he would become a better father. Wyatt argues that this letter is irrelevant. The plaintiffs disagree and contend that the letter is relevant as to their claim for loss of parental consortium. The Court agrees. "Loss of parental consortium is . . . based on the idea that a child has a right to compensation for the loss of parental love, security, care, and nurturing." Estate of Presley v. CCS of Conway, No. 3:03CV-117-H, 2004 WL 1179448, at *2 (W.D. Ky. May 18, 2004) (citing Giuliani v. Guiler, 951 S.W.2d 318, 319-20 (Ky. 1997)). This letter provides evidence of the type of love, security, care, and nurturing that may have been provided by Shouse after he was released from DCDC. Wyatt's objection to this exhibit is **OVERRULED**.

Death Photographs (**Dated Exhibit 34**)

Shortly following Shouse's death, photographs were taken of his body. Wyatt argues that the nine photographs identified by the plaintiffs are irrelevant because they serve no useful purpose other than to gain sympathy from the jury. The plaintiffs argue that the photographs are relevant to show the amount of pain and suffering Shouse experienced before his death. Generally speaking, "'[p]hotographs are admissible as long as what they purport to depict is relevant to the issues and substantial identity to relevant times and conditions is established.'" Shahid v. City of Detroit, 889 F.2d 1543, 1546 (6th Cir. 1989) (quoting United States v. Daniels, 377 F.2d 255, 258 (6th Cir. 1967)). In Walker v. Norris, the Sixth Circuit "summarily rejected" a § 1983 defendant's argument that the introduction of photographs of the deceased was "substantially more prejudicial than

probative." 917 F.2d 1449, 1453 n.9 (6th Cir. 1990). The trial court did not "abuse[] its discretion in admitting the photographs as evidence of conscious pain and suffering." Id. Here, the Court finds that the nine photographs at issue may be relevant if they provide evidence of Shouse's conscious pain and suffering. Although the defendant submitted the nine photographs as an exhibit to his objections, the photographs are black-in-white and unclear. Therefore, the Court at this time is unable to determine whether the photographs are admissible. And even if the Court finds the photographs admissible at trial, it may limit the number of photographs that the plaintiffs may introduce if they are duplicative. The Court will make these determinations at trial. Wyatt's objection to these exhibits is **RESERVED** until trial.

> News Release (**Dated Exhibit 42**), Kentucky Department of Corrections Record and Documents of Incident (**Dated Exhibit 43**), Documentation of Sheriff's Investigation with Witness Statements (**Undated Exhibit 2**), Newpaper articles and editorials concerning the incident (**Undated Exhibit 23**), and DVD of News25 television report concerning incident (**Undated Exhibit 24**)

Wyatt objects to these exhibits arguing that they have not been authenticated. He also contends that Dated Exhibit 43 contains irrelevant information and Undated Exhibits 23 and 24 contain hearsay. The plaintiffs represent that they only intend to use these exhibits for purposes of impeachment. Whether these exhibits are properly authenticated, relevant, or hearsay will depend upon what facts may be developed at trial and the purpose for which the exhibits will be used. Therefore, the Court is not currently in a position to rule upon Wyatt's objection to these exhibits. His objection is **RESERVED** until trial.

Final Diagnoses (**Dated Exhibit 50**)

In this report, the medical examiner concluded that Shouse's death was caused by asphyxia via hanging. It also indicates that Shouse's blood tested positive for paroxetine. Wyatt argues that this exhibit should be excluded because it has not been properly authenticated and because the presence of paroxetine in Shouse's blood is no longer an issue in this case. The plaintiffs indicate that they will withdraw this exhibit if the defendants stipulate as to Shouse's cause of death. It appears that Shouse's cause of death is uncontested and therefore Wyatt's objection is **SUSTAINED**.

Jail Organization Chart (**Undated Exhibit 1**) and Jail Floor Plan (**Undated Exhibit 10**)

The plaintiffs' Undated Exhibit 1 graphically shows a hierarchy of employment positions within the DCDC organization. Wyatt argues that the chart is not relevant to any of the issues being tried. The Court disagrees. The chart provides background information about Wyatt's position within the organizational hierarchy. And because "[b]ackground evidence is universally offered and admitted as an aid to understanding[,]" United States v. Condrin, 473 F.3d 1283, 1286 n.2 (10th Cir. 2007) (quotation omitted), the Court finds no reason to bar the chart's use at trial. Similarly, Undated Exhibit 10, which provides a graphical depiction of DCDC's layout, provides background information so that the jury is able to visualize Shouse's movements within the facility prior to his death, the location at which Wyatt was stationed when Shouse died, and the location where Shouse was interviewed by Mingo prior to his death. Wyatt's objection to these two exhibits is **OVERRULED**.

State Regulations regarding inmate supervision (**Undated Exhibit 3**)

This exhibit, which is an excerpt from DCDC's policy and procedure manual, discusses the surveillance requirements of the facility. For "regular surveillance," the manual provides that "[d]etention personnel shall conduct a direct in-person surveillance of each prisoner no less than every hour on an irregular schedule." For "special surveillance," the manual provides that "[d]etention personnel shall conduct a direct in-person surveillance no less than every 20 minutes on the following prisoners: . . . d. Prisoners in segregation (unless housed in a single housing unit) . . . [and] g. Suicide and Medical Watches[.]" Wyatt contends that the manual should be excluded because the "special surveillance" section did not apply to Shouse who was located in isolation. The plaintiffs disagree, and contend that by its own terms, the manual requires those prisoners in segregation be monitored every 20 minutes. Regardless of whether the "special surveillance" provision or the "regular surveillance" provision applies, the policy itself is admissible because it sets forth the interval–every 60 minutes or every 20 minutes–that Wyatt was to monitor Shouse. Wyatt's objection, therefore, is **OVERRULED**.

All documents in the possession of River Valley Behavioral Health concerning Mr. Shouse (**Undated Exhibit 19**) and All documents in the possession of Daviess County Detention Center concerning Mr. Shouse (**Undated Exhibit 20**)

Wyatt objects to the description of these two exhibits because they are overly broad and not specifically identified. For Undated Exhibit 19, the plaintiffs identify the exhibit as "[a]ll documents in the possession of River Valley Behavioral Health concerning Mr. Shouse." For Undated Exhibit 20, the plaintiffs identify the exhibit as "[a]ll documents in the possession of Daviess County Detention Center concerning Mr. Shouse." The plaintiffs respond by representing that they will only use these documents for purposes of impeachment. Because there is no requirement that the

plaintiffs identify those exhibits that will be used only for purposes of impeachment, see Fed. R. Civ. P. 26(a)(3) (requiring pretrial disclosure of documents that will or may be offered into evidence unless used "solely for impeachment"), Wyatt's objection is **OVERRULED**.

Demonstrative Time Lines and Chronologies (**Undated Exhibit 22**)

This exhibit is a chart that summarizes many of the other exhibits contained in the plaintiffs' exhibit list. Wyatt argues that most of the information contained in the chart is irrelevant, but does not cite any specific examples. Inasmuch as the chart contains information that the Court has excluded in this Order or contains information from exhibits withdrawn by the plaintiffs, they must revise the chart to reflect these exclusions and withdrawals. To this extent, Wyatt's objection to this chart is **SUSTAINED**. And inasmuch as the chart contains information that the Court has found relevant or for which the parties have not specifically objected, the chart is admissible. To this extent, Wyatt's objection is **OVERRULED**.

Other Objections

The plaintiffs have withdrawn the other exhibits to which Wyatt objected. His objections to Dated Exhibits 27, 45, and 53 and Undated Exhibits 6, 7, 8, 9, 12, 13, 18, and 21 are **OVERRULED as moot**.

### B. Wyatt Motion in Limine [DN 89]

Wyatt's Motion in Limine addresses many of the same issues he raised in various objections to the plaintiffs' exhibit list. He argues that the "[p]laintiffs' previous allegations and arguments relating to the design of the cells, the medical and/or psychiatric treatment afforded the deceased while an inmate, and whether or not he had been abused by taser or pepper spray are no longer issues. The only remaining issue relates to the actions or inactions of Deputy Wyatt when the

deceased was last released from suicide watch." He further contends that "any other testimony, comment, or argument is not relevant" and "would serve no purpose other than try to influence the jury to base its decision on something other than the conduct of defendant Wyatt."

The Court only agrees in part. The plaintiffs at one point argued that DCDC's medical treatment of Shouse was deliberately indifferent and that certain incidents between the guards and Shouse constituted excessive force. These issues have been narrowed by way of summary judgment and the plaintiffs are precluded from arguing Shouse's medical treatment by DCDC staff was improper or that guards at DCDC used excessive force against Shouse. However, in an action pursuant to 42 U.S.C. § 1983, the plaintiff is required to show as part of the subjective component of deliberate indifference, "facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." Comstock v. McCrary, 273 F.3d 693, 703 (6th Cir. 2001) (citation omitted). The incidents and medical treatment in question are still relevant to show whether Wyatt was subjectively aware of facts from which he could draw an inference as to Shouse's suicidal tendencies. The plaintiffs are not precluded from making this argument. Therefore, Wyatt's motion in limine is **GRANTED in part** and **DENIED in part**.

### C. Mingo/River Valley Motion in Limine [DN 91]

Mingo and River Valley identify nine issues the plaintiffs should be precluded from introducing or discussing at trial. Only three remain contested.

First, River Valley argues that the plaintiffs should not be able to introduce Shouse's "death photographs, post mortem report and obituary." The Court has already addressed the death photographs and post mortem report in Wyatt's objections to the plaintiffs' exhibit list. The death

9

photographs may be relevant for purposes of demonstrating the conscious pain and suffering Shouse experienced prior to his death. But the Court is unable to determine whether the photographs in any way identify the pain and suffering Shouse experienced prior to his death. To this extent, River Valley's motion is **RESERVED** until trial where the Court may altogether preclude or, if the photographs are duplicative, limit the number of admissible photographs. Conversely, the Court has already precluded the plaintiffs from introducing the post-mortem report because Shouse's cause of death is uncontested. Accordingly, this portion of the River Valley's motion is **GRANTED**. As the plaintiffs no longer intend to introduce Shouse's obituary, this portion of River Valley's motion is **DENIED as moot**.

Second, River Valley seeks to preclude testimony of any new or previously undisclosed opinions from any of the expert witnesses called to testify by or on behalf of the plaintiffs in this case. The plaintiffs do not object to this motion so long as a the defendants are also precluded from introducing new or previously undisclosed expert testimony. Because Fed. R. Civ. P. 37(c)(1) already prohibits parties from introducing new or previously undisclosed expert opinions at trial, see Muldrow ex rel. Muldrow v. Re-Direct, Inc., 493 F.3d 160, 167 (D.C. Cir. 2007) ("Under Rule 37(c)(1), if a party fails to disclose the information required by Rule 26(a), its expert may not testify as to that information . . . ."), River Valley's motion insofar as it seeks to preclude such testimony is **GRANTED**. No party shall introduce any new or previously undisclosed expert opinions at trial.

Lastly, River Valley seeks to preclude the plaintiffs from introducing any media coverage of Shouse's death. They argue that such evidence is hearsay. The plaintiffs respond by representing that any such evidence will only be used for purposes of impeachment or rebuttal. Whether this evidence constitutes hearsay will depend upon what facts may be developed at trial and the purpose

for which the evidence will be used. Therefore, the Court is not currently in a position to rule upon this portion of River Valley's motion which is **RESERVED** until trial.

River Valley's motion is otherwise **GRANTED**. The plaintiffs are prohibited from offering, introducing, or eliciting evidence, opining, or otherwise arguing (1) that River Valley does or may have liability insurance to cover any potential award of damages in this matter; (2) that River Valley or any of its employees have or may have had, other lawsuits filed against them; (3) hearsay testimony by any family members or friends concerning their impression of what occurred during Shouse's suicide evaluation performed by Mingo; and (4) the school records of Shouse's children.


cc:     Counsel of Record